OPINION OF THE COURT
William A. Walsh, Jr., J.
This is an action to enforce provisions of a separation agreement relating to defendant’s obligation to provide a college education for his son, one of the plaintiffs in the action, and to pay dental expenses incurred by another minor child.
There was testimony that one of the children incurred dental expenses in the amount of $400 for the extraction of wisdom teeth. That bill was paid by defendant, without prejudice and reserving for adjudication the question of his liability under the terms of the separation agreement. Inasmuch as this was the extent of the proof offered, the court is unable to resolve the issue presented. The second and third causes of action pleaded in the complaint are dismissed. Defendant, if he is so advised, may utilize any available remedy to seek recovery of the amount of the dentist’s bill he paid.
*813 The parties were married on August 24, 1957 and are the parents of three children now 19, 17 and 16 years of age.
A separation agreement, dated December 14, 1967, survived the entry of a Mexican decree of divorce on January 13, 1968. Defendant remarried on December 7, 1968. There are two issue of this marriage, now seven and four years of age.
Pursuant to separation agreement terms, defendant is obligated to provide each of his children of his first marriage with a four-year undergraduate college or technical school education. Defendant was to be consulted with regard to the selection of a college or technical school, and his approval of the school selected was not to be unreasonably withheld. In addition to tuition, defendant was to assume payment of related fees such as books, room, board, laboratory fees, transportation to and from school plus a reasonable allowance.
Mark, the oldest child, graduated from high school in June, 1976. He ranked seventh in his class. His intention was to pursue a premedical course of study in college.
Beginning in the fall of 1974, Mark and defendant discussed college plans. Mark informed his father that he was interested in attending Harvard, defendant’s alma mater, Cornell, Brown or M.I.T.. Defendant made up a list of those and other colleges, noted the cost of each and observed that Mark should also consider some less expensive schools.
It is apparent that Mark and his mother decided that Harvard was to be the choice. Tuition and other costs for which defendant would be responsible under the agreement would amount to approximately $7,000 for Mark’s freshman year. Defendant maintained that such cost was excessive if he was to fulfill his agreement obligation to the two other children. His daughter would be ready for college in the fall of 1978 and the youngest child would matriculate soon thereafter. Also, the future college requirements of the two children of his present marriage had to be considered. It is his contention that since he will have two children in college at the same time for an extended period, he can afford to pay educational expenses of $4,000 a year per child.
Mark, in spite of his father’s objection, and with his mother’s encouragement, enrolled at Harvard. Educational expenses at that institution amounted to $7,260.75 for his freshman year from September, 1976 to June, 1977, and about $8,000 for the school year ending in June, 1978.
*814 Mark’s application to Harvard for financial aid was rejected in view of the earnings and assets of his mother and father. Plaintiff, Marilyn C. Heaney, receives employment income of $22,000 a year and, in addition, receives from defendant $9,000 a year in alimony and child support payments. Harvard did offer to lend Mark $1,500 for tuition purposes, but such aid was refused.
Mark is an honor student at Harvard. He claims that Harvard is the only institution that could supply him with an education which would "develop my potential to the fullest”. His mother believed that Harvard was the most outstanding school for one interested in preparing for a career as a physician. The choice of a school, she maintained, was up to Mark subject to family circumstances.
The question to be resolved is whether defendant’s refusal to concur in the selection of Harvard as the college to be attended by his son, because of the expense involved, was unreasonable. There was testimony that defendant did not favor Harvard for nonacademic, environmental reasons. In the absence of the objection to cost, however, Harvard would have been acceptable to defendant despite his opinion that another college would have been better for Mark in a social sense.
In the absence of a separation agreement provision which requires a father to provide a son with a college education, a father’s responsibility for such expense would depend upon his station in life and his financial ability to pay (15 NY Jur, Domestic Relations, § 377; Matter of Weingast v Weingast, 44 Misc 2d 952). "The duty to educate, like the duty to support, rests, in the absence of statute to the contrary, primarily upon the husband and secondarily upon the wife. However, the mode, kind and extent of a child’s education 'is necessarily largely left to his discretion’ ” (Wagner v Wagner, 51 Misc 2d 574, 576, affd 28 AD2d 828). The Appellate Division, Second Department, has ruled, however, that a private college education is not a necessary for which a father can be made to pay unless unusual circumstances warrant the expenditure (Matter of Hawley v Doucette, 43 AD2d 713). The court in Hawley recognized that a father may bind himself to provide such education by express and enforceable agreement. Finally, in the event a court exercises its discretion and makes an award for a college education, such allowance must reflect what is practicable, not what is desirable (Prospero v Prospero, 39 AD2d 634).
*815 In Matter of Boden v Boden (42 NY2d 210), the Court of Appeals held that a separation agreement provision relating to child support may not be modified unless a showing is made of an unanticipated, unreasonable and unforeseen change of circumstances. The court refused to modify upward the child support provisions of the separation agreement so as to include the cost of a college education inasmuch as specific provision had been made to cover educational expenses, and there was no showing of an unforeseen change in circumstances, or that the agreement was not fair and equitable when made.
It is against this background we must construe this separation agreement college education provision. The court determines that, under that provision, defendant’s refusal to approve Mark’s matriculation into a college which is beyond his financial means constitutes a reasonable refusal when judged by the standard of practicability not desirability. The maximum amount chargeable to Mark’s college education must be fixed recognizing defendant’s contractual responsibility to two other children nearing college age, and the parental obligation he owes to his two children of his present marriage. Although duty to the children of his second marriage does not constitute a change of circumstances which would warrant modification of the support obligation owed Mark and the other children of defendant’s first marriage, they are entitled to support and educational consideration.
The agreement to educate makes defendant a consulting partner in approving the selection of a school. There is no designation of the type, quality or kind of college contemplated. It does not preclude Mark from attending any college of his choice without paternal approval, in a situation where the sole objection relates to cost, but it may limit defendant’s financial responsibility to a sum less than charged by the institution. Unlike Boden (42 NY2d 210, supra), the question here is enforcement, not modification, of an agreement. Defendant’s financial resources must be examined to determine the limit of his liability. The income and assets of his first wife are not relevant to this inquiry.
It was defendant’s testimony that his 1976 gross salary and dividends amounted to $52,786. His net after taxes was $41,-000. His 1977 gross earnings were $56,000. On January 1, 1976 he owned 293 shares of IBM stock. In 1976 he had a standard of living deficit of $4,000. This sum was made up by *816 deferring expenditures which should have been made and selling shares of stock received through a stock-purchase plan. Under that plan, he receives about 26 shares of IBM stock a year at a price which is 85% of market value. The 170 shares owned as of December 1, 1977 have a market value of about $32,617.
At the time the separation agreement was executed in 1967, defendant earned a gross annual salary of about $25,000.
Defendant, a professional forecaster for IBM, prepared charts, which were received in evidence, and reflected: his summary of gross income for 1976 and taxes and living expenses for that year; itemized income and taxes and the resulting income available; analyzed living expenses; projected expenses in 1977; considered 1977 gross income and taxes; made projections relating to the educational expenses of five children; and graphically represented education expenses through the year 1995 when defendant will be required to retire on a pension of $18,700 a year. An examination of that material impelled his conclusion that, in order to educate the three children who are the subject of the separation agreement education provision, he will be paying for 12 years of education in an eight-year period.
Upon due consideration of the record herein, the court determines that a reasonable construction of the separation agreement college education provision requires defendant to expend the maximum amount of $5,000 per year per child for the four-year period each child is in college. The clerk is directed to enter a money judgment in favor of Mark’s maternal parent and against defendant in the amount of $10,000, representing reimbursement of two years of college tuition and related expenses paid by plaintiff, Marilyn Heaney.
Plaintiffs’ attorney seeks an award of counsel fees for representing the interests of his clients in this action.
A counsel fee may be awarded in an action to enforce the support provisions of a separation agreement which has been incorporated in and survives a foreign divorce decree. Such an award is made pursuant to section 238 of the Domestic Relations Law, since such an action is, in effect, a proceeding to compel payments due pursuant to a judgment of divorce (Fabrikant v Fabrikant, 19 NY2d 154).
Section 238 of the Domestic Relations Law vests this court with discretionary power, in a matrimonial action, to require a husband to pay the "wife’s expenses” in commencing or *817 defending an action or proceeding. The term "wife” includes a former wife. A wife’s financial ability to pay her counsel is not a factor to be considered in formulating an award of counsel fees under that statute in view of the statutory language employed. The discretionary mandate is directed toward the repayment of expenses incurred by a party in a lawsuit. A counsel fee is one such expense. The Court of Appeals in Fabrikant (supra) decreed that a nonmatrimonial action to enforce separation agreement provisions is considered a matrimonial action, for purposes of section 238 of the Domestic Relations Law, if a judgment of divorce has been entered which adopts the terms of that agreement. It is only plaintiff, Marilyn Heaney, who may be entitled to reimbursement for litigation expenses. Agreement third-party beneficiaries are not members of the statutory class singled out to receive the benefit conferred.
Plaintiffs’ counsel is to submit an affirmation of services, on five days’ notice to his adversary, with the judgment to be submitted hereon. A counsel fee award, if any, will be included in the judgment.